Case: 1:13-cv-02501 Document #: 29 Filed: 07/26/13 Page 1 of 20 PageID #:180

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PURZEL VIDEO GMBH,<br><br>*Plaintiff*,<br><br>v.<br><br>JOEL LIPSKY, TATIANA SAVENOK, MUHAMED HADZIMURATOVIC, MICHAEL SMITH, SCOTT KEHOE, JEFFREY WARNER, MIKE JUAREZ, AND DOES 18, 29, AND 42,<br><br>*Defendants*. | Case No. 1:13-cv-02501<br><br>Hon. Joan B. Gottschall<br><br>***JURY TRIAL DEMANDED*** |

### FIRST AMENDED COMPLAINT

Plaintiff Purzel Video GmbH ("Purzel Video") brings this action against Defendants Joel Lipsky, Tatiana Savenok, Muhamed Hadzimuratovic, Michael Smith, Scott Kehoe, Jeffrey Warner, and Mike Juarez ("Defendants") alleging copyright infringement and contributory copyright infringement, and seeking damages and injunctive relief. Purzel Video alleges as follows:

### JURISDICTION AND VENUE

1. This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1400(a). Plaintiff has used geolocation technology to determine that, upon information and belief, each Defendant may be found in this State.

3. In addition, this Court has personal jurisdiction over the Defendants because geolocation technology places all Defendants within this State and in this District. All of the Defendants conspired to and did commit acts of copyright infringement and contributory copyright infringement statewide and nationwide, including in this State and in this District. Defendants, therefore, should anticipate being haled into court in this State and in this District.

## JOINDER

4. Defendants acted in a collective and interdependent manner via the Internet in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture, "Creampie Young Girls 1," ("Motion Picture") by means of interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent.

5. This case involves one "swarm" in which numerous Defendants engaged in mass copyright infringement of Plaintiff's Motion Picture. Each Defendant illegally uploaded and shared Plaintiff's Motion Picture within this swarm.

6. Upon information and belief, each Defendant was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing Plaintiff's copyright.

7. By participating in the swarm, each Defendant participated in the same transaction, occurrence, or series of transactions or occurrences as at least the other defendants in the same swarm. In particular, Plaintiff's investigator has downloaded the Motion Picture from

each Defendant identified herein. In addition, by participating in the swarm, each Defendant participated in a collective enterprise constituting "shared, overlapping facts."

8. P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the Internet. The particular P2P protocol at issue in this suit is called "BitTorrent."

9. For example, user Jeffrey Warner of Illinois initiated his infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows, software and adult videos. Mr. Warner then intentionally obtained a torrent file (the "Swarm Sharing Hash File" at issue in this suit, 840DCF35EA1B0EA81724D0385604461FDF532606 ("Hash 840D")) for Plaintiff's Motion Picture from the index and intentionally loaded that torrent file into a computer program designed to read such files.

10. With the torrent file intentionally loaded by Mr. Warner, upon information and belief, his BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with other users possessing and "sharing" copies of the digital media described in Hash 840D, namely, Plaintiff's Motion Picture, including with, upon information and belief, other identified Defendants. The program coordinated the copying of Plaintiff's Motion Picture to Mr. Warner's computer from other users, or peers, sharing the film. As the Motion Picture was copied to Mr. Warner's computer piece by piece, these downloaded pieces of Plaintiff's Motion Picture were then immediately available to other users from Mr. Warner's computer.

11. Each of the Defendants performed the same acts as those described for Mr. Warner, in paragraphs 9 and 10. Each of these Defendants also immediately became an uploader, meaning that each Defendant's downloaded pieces were immediately available to other users seeking to obtain the file, without degradation in sound or picture quality. It is in this way that each Defendant simultaneously copied and distributed the Motion Picture. Thus, each participant in the BitTorrent swarm was an uploader (distributor) and a downloader (copier) of the illegally transferred file. Here, upon information and belief many members of the swarm at issue downloaded and uploaded portions of Plaintiff's Motion Picture to each other.

12. This interactive, simultaneous data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file. Thus, after a successful download of a piece, the piece is made available to all other users.

13. Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

14. Essentially, because of the nature of the swarm uploads and downloads as described above, every Defendant infringer, in concert with his or her Defendant swarm members, is simultaneously allowing others to steal (download from the swarm) Plaintiff's

copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. This illegal simultaneous data-sharing swarm is performed because each Defendant acts in an interactive manner with other Defendants, including with, upon information and belief, other identified Defendants, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action. Thus, there is a significant amount of infringement in this District, and a significant transmission of infringing materials to and from this District.

15. In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.

16. Upon information and belief, many Defendants also acted in concert with other Defendant swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange is responsible for helping swarm members find more users that share the same data. Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

17. Upon information and belief, many Defendants also acted in concert with other Defendant swarm members by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. By allowing members of the swarm to rely on

individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

18. The torrent swarm in this case is not an actual entity, but is rather made up of numerous individuals, acting in concert with each other, to achieve the common goal of infringing upon the Plaintiff's copyright.

## PARTIES

19. Plaintiff is a German company located at Industriestr, 69a, Vielsdorf, 98669 Germany, that produces, markets and distributes motion pictures.

20. Defendant, Joel Lipsky, formerly known as Doe 3, is an individual residing, upon information and belief, at 5736 Emerson Street, Morton Grove, Illinois, 60053.

21. Defendant, Tatiana Savenok, formerly known as Doe 7, is an individual residing, upon information and belief, at 1877 Orchard Road, Wheaton, Illinois, 60189.

22. Defendant, Muhamed Hadzimuratovic, formerly known as Doe 14 is, upon information and belief, an individual residing at 5126 Fitch Avenue, Skokie, Illinois, 60077.

23. Defendant, Michael Smith, formerly known as Doe 43 is, upon information and belief, an individual residing at 1721 Forest Cove Drive, Mount Prospect, Illinois, 60056.

24. Defendant, Scott Kehoe, formerly known as Doe 52 is, upon information and belief, an individual residing at 9312 Bundoran Drive, Orland Park, Illinois, 60462.

25. Defendant, Jeffrey Warner, formerly known as Doe 68 is, upon information and belief, an individual residing at 4426 North Saint Louis Avenue, Chicago, Illinois, 60625.

26. Defendant, Mike Juarez, formerly known as Doe 76 is, upon information and belief, an individual residing at 7331 Sayer Road, Bartlett, Illinois, 60103.

27. Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected within a swarm for the sharing of unique files. The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).

28. This hash file provides access to an unauthorized copy of Plaintiff's copyrighted Motion Picture.

29. Defendants' infringements allow them and others to unlawfully obtain and distribute unauthorized copies of Plaintiff's Motion Picture for which Plaintiff spent a substantial amount of time, money and effort to produce, market and distribute.

30. Each time a Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even one unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights in its Motion Picture.

31. Defendants initially became known to Plaintiff by the Internet Protocol ("IP") address assigned to each Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of was observed. In addition, and as provided in Exhibit A and Group Exhibit C, Plaintiff has learned the torrent file copied and distributed by each Defendant – Hash 840D, the BitTorrent client application utilized by each Defendant, and

7

the location of each Defendant at the time of download – the Northern District of Illinois – as determined by geolocation technology utilized by Plaintiff's investigator.

32. Pursuant to this Court's Order granting Plaintiff's motion for expedited discovery, Plaintiff served a third-party subpoena on ISPs determined by Plaintiff's investigator.

33. Before any ISP provided any information to Plaintiff, the ISP sent notice to the then Doe Defendants informing him or her of the subpoena requesting information, and informing him or her of his or her rights to challenge the subpoena. None of the Defendants responded to this notice or challenged the subpoena.

34. Subsequently, the ISPs produced information to Plaintiff identifying the Doe Defendants as described above in Paragraphs 20-26.

35. Plaintiff has attempted to contact each Defendant multiple times. Defendants have ignored Plaintiff's attempted contact, and have failed to reach out to Plaintiff after repeated notifications of this action.

36. Included in Plaintiff's correspondence to the Defendants was a document entitled "Frequently Asked Questions." This document addresses the issue if the account holder believes he or she might not be the person who downloaded or otherwise infringed the Motion Picture. As set forth below, this document informs the recipient that the primary concern is stopping infringement and that Plaintiff will work with any defendant who has been wrongfully identified to determine the identity of the true infringer.

> *I know that I personally didn't download this work. What could have happened?*
>
> Your ISP linked your name and address with an IP address that infringed our client's copyrighted work. Regardless of your individual involvement in any download, someone accessed your IP address (and thus your account) and used this resource to download the copyrighted work. Perhaps it was a guest or family member who accessed your IP address for the unlawful download. Our interest is in tracking down the infringer of our client's copyrighted work and to put a stop to the ongoing infringement. We have the tools to work with you to determine who infringed our client's work.

Defendants failed to respond or take any action upon receipt of this letter.

37. Defendants silence to this action is troubling because, as described above, each Defendant (and/or his or her IP address) was a source from which others illegally downloaded Plaintiff's work. Each Defendant (and/or his or her IP address) is still a potential source of further illegal distribution of Plaintiff's work.

38. Further, despite Plaintiff's previous attempts to contact Defendants, some still have uploaded materials through BitTorrent as recently as July 23, 2013. These Defendants, because of their continued interaction with various BitTorrent swarms, could resume sharing Plaintiff's Motion Picture at any time. Therefore, preventative action is necessary to ensure that the Defendants do not resume illegally distributing Plaintiff's copyrighted work to others.

## STATEMENT OF FACTS

### THE COPYRIGHT

39. Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to the Motion Picture.

40. The Motion Picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

41. Purzel Video, as the owner, holds the copyright registration on the Motion Picture, including Copyright Registration Number PAu 3-631-765 ("the '765 Copyright"). See Exhibit B, Certificate of Registration.

42. Under the Copyright Act, Purzel Video is the proprietor of all right, title, and interest in the '765 Copyright, including the right to sue for past infringement.

43. Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted work and to distribute the copyrighted work to the public.

44. Defendants had notice of Plaintiff's copyright.

## COPYRIGHT INFRINGEMENT AND BITTORRENT

45. BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the Internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users to download and upload from each other simultaneously. The process works as follows:

46. Users intentionally download a small program that they install on their computers – the BitTorrent "client" application. The BitTorrent client is the user's interface during the downloading/uploading process. There are many different BitTorrent clients, all of which are readily available on the Internet for free.

47. BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

48. A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small torrent files known as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

49. The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique info-hash, as well as specifics about the media file.

50. A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

51. Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an

11

uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

52. Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

53. The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The original file, in this is Hash 840D, which provides access to Plaintiff's copyrighted Motion Picture.

54. Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Motion Picture on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Motion Picture when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Motion Picture by exchanging the pieces of the Motion Picture that each one has.

55. Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

56. This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm. Because of the nature of the collective swarm, every infringer is – and by necessity all infringers together are – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

57. Plaintiff has recorded each Defendant identified herein actually publishing the Motion Picture via BitTorrent, as Plaintiff's investigator has downloaded the Motion Picture from each Defendant identified herein.

58. Plaintiff's Motion Picture is easily discernible as a professional work. Plaintiff created the Motion Picture using professional performers, directors, cinematographers, lighting technicians, set designers and editors. Plaintiff created the Motion Picture with professional-grade cameras, lighting, and editing equipment.

59. At various times, Plaintiff discovered and documented its copyrighted Motion Picture being publicly distributed by Defendants and various other peers, by and through the BitTorrent network.

60. Defendants, without authorization, copied and distributed the audiovisual Motion Picture owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

DEFENDANTS ARE MEMBERS OF A SINGLE BITTORRENT SWARM

61. Defendants are peer members who have each participated in one P2P network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted Motion Picture without permission.

62. Each Defendant (or, at a minimum, a computer utilizing each Defendant's IP address) initiated infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such file.

63. Each Defendant is a member of a single swarm. Exhibit A.

64. Each Defendant owns or otherwise has control of a different computer collectively connected to the Internet via an IP address that contained – or possibly still contains – a torrent file identifying Plaintiff's copyrighted Motion Picture. Each computer also contained or still contains Plaintiff's copyrighted Motion Picture, which was downloaded using the information encoded in the torrent file.

65. All of the Defendants republished and duplicated the Plaintiff's Motion Picture in an effort to deprive the Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT

66. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 65 as if fully set forth herein.

67. Plaintiff is, and at all relevant times, has been, the copyright owner of the Motion Picture infringed upon by all Defendants.

68. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the public.

69. The Plaintiff alleges that each Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available for distribution to others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without the permission or consent of Plaintiff, distributed the copyrighted Motion Picture *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

70. Each Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

71. As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

72. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all copies of the copyrighted Motion Picture made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

73. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 72 as if fully set forth herein.

74. Plaintiff is, and at all relevant times, has been, the copyright owner of the Motion Picture infringed upon by all Defendants.

75. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the public.

76. The Plaintiff alleges that each Defendant, without the permission or consent of the Plaintiff, has participated in a BitTorrent swarm directed at making the Motion Picture available for distribution to himself or herself as well as others, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the

public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available for distribution to others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

77. By participating in the BitTorrent swarm with other Defendants, each Defendant induced, caused or materially contributed to the infringement of Plaintiff's copyright and exclusive rights under copyright by other Defendants and other swarm members. Exhibit A identifies the Defendants known to Plaintiff as of the date of this Complaint who have, without the permission or consent of Plaintiff, contributed to the infringement of Plaintiff's copyright by other Defendants and other swarm members.

78. Each Defendant's acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

79. As a result of each Defendant's contributory infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

80. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further contributing to the infringement of Plaintiff's copyright and ordering that each Defendant destroy all copies of the copyrighted motion picture made in violation of Plaintiff's exclusive rights to the copyright.

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

A. For entry of preliminary and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture ("Plaintiff's Motion Picture"), including without limitation by using the Internet to reproduce or copy Plaintiff's Motion Picture, to distribute Plaintiff's Motion Picture, or to make Plaintiff's Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Each Defendant shall also destroy all copies of Plaintiff's Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of those downloaded Motion Picture transferred onto any physical medium or device in each Defendant's possession, custody, or control.

B. For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff.

C. For Plaintiff's costs.

D. For Plaintiff's reasonable attorney's fees.

E. For such other and further relief as the Court deems proper.


Dated: July 26, 2013                    Respectfully submitted,
                                        Purzel Video GmbH

                                        By its Attorneys,

SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD LLC


By: /s/ Paul A. Lesko
    Paul A. Lesko
    One Court Street
    Alton, IL 62002
    Ph: 618.259.2222
    Fax: 618.259.2251
    plesko@simmonsfirm.com


    Patrick J. Keating – IL Bar No. 6211380
    230 West Monroe, Suite 2221
    Chicago, Illinois 60606
    Ph: 312-759-7500/Fax: 312-759-7516
    pkeating@simmonsfirm.com


***Attorneys for Plaintiff Purzel Video GmbH***

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 26th day of July, 2013, a true and accurate copy of the foregoing was filed via the Court's Electronic Case Filing system ("ECF") upon all counsel of record:

Jonathan LA Phillips
Shay Kepple Phillips, Ltd.
456 Fulton St., Suite 255
Peoria, IL 61602
Phone: 309.494.6155
*Counsel for Defendant Doe 18*

Erin Kathryn Russell
The Russell Firm
233 S. Wacker Drive 84 FL
Chicago, IL 60606
312.994.2424
*Counsel for Defendant Does 29 & 42*

Brian J. Cohan
Brian J. Cohan, P.C.
5659 RFD
Long Grove, IL 60047
Phone: 847.202.3341
*Counsel for Defendant Joel Lipsky*

/s/ *Paul A. Lesko*
Paul A. Lesko - Simmons, Browder, Gianaris, Angelides & Barnerd, LLC